[Cite as *State v. Guzman*, 2018-Ohio-4470.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO.  1-18-21

      v.

ROBERTO GUZMAN,

                                        O P I N I O N

      DEFENDANT-APPELLEE.

[AMERICAN SURETY COMPANY - APPELLANT].

Appeal from Allen County Common Pleas Court
Trial Court No. CR2015 0010

Judgment Reversed and Cause Remanded

Date of Decision:   November 5, 2018

APPEARANCES:

    *Damion M. Clifford* for Appellant

    *Randall L. Basinger* for Appellee, State of Ohio

**ZIMMERMAN, J.**

{¶1} Third-party appellant, American Surety Company ("Appellant"), appeals the *nunc pro tunc* judgment of the Allen County Common Pleas Court that added it as a party to a prior court judgment. On appeal, Appellant asserts that the trial court erred: 1) by adding it to a December 21, 2015 judgment via a *nunc pro tunc* entry; and 2) by entering judgment against it for $150,000. For the reasons that follow, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

*Factual and Procedural Background*

{¶2} On February 12, 2015, Roberto Guzman ("Guzman") was indicted by the Allen County Common Pleas Grand Jury on one count of possession of cocaine, a felony of the first degree, in violation of R.C. 2925.11(A), R.C. 2925.11(C)(4)(e). (Doc. No. 5). Guzman's bond in the trial court was set in the amount of $100,000 cash or surety. (Doc. No. 7). Appellant appeared in the trial court for arraignment on February 27, 2015 and pled "not guilty" to the charge contained in the indictment. (Doc. No. 5).

{¶3} On May 4, 2015, Guzman posted the $100,000 bond through a bail bonding company. (Doc. No. 63). Scott Hunter, ("Hunter") on behalf of Erie Shore Bail Bonds, issued Guzman's bond. (*Id.*). Appellant was a guarantor of the bond executed by Hunter. (*Id.*).

{¶4} On June 17, 2015, Guzman entered a negotiated plea of no contest to the possession of cocaine charge. (Doc. No. 70). The trial court journalized its judgment entry accepting Guzman's plea on the same date, and continued Guzman's $100,000 bond pending his sentencing. (Doc. No. 71).

{¶5} On July 27, 2015, the trial court sentenced Guzman to prison, but stayed the prison sentence pending appeal. (Doc. No. 76). With respect to Guzman's previously posted bond, the trial court, in its judgment entry, issued the following order:

> **IT IS FURTHER ORDERED** the bond as previously set is hereby revoked and an appellate bond of $150,000 cash or surety is set.

(Emphasis sic). (*Id.*). Two days later, Guzman posted a $50,000 bond with the trial court. (Doc. No. 77). Hunter co-signed Guzman's second bond on behalf of Erie Shore Bail Bonds, which Appellant guaranteed. (*Id.*).

{¶6} On October 7, 2015, the trial court issued an order revoking Guzman's appellate bond because Guzman never filed an appeal. (Doc. No. 80). The trial court further ordered that Guzman be taken into custody to serve the imposed prison sentence. (*Id.*). However, Guzman absconded and failed to appear at a show cause hearing held on October 15, 2015. (Doc. No. 84).

{¶7} On October 16, 2015, the State filed a motion for forfeiture of bond pursuant to Crim.R. 46 and R.C. 2937.35. (Doc. No. 86). The State's motion was scheduled for a show cause hearing on October 26, 2015. (Doc. No. 87). According

to the record, the State, Guzman's attorney, Crime Victim Services, and American Surety Company/Erie Shore Bail were served with a copy of the notice pertaining to the bond forfeiture hearing. (Doc. No. 88).

**{¶8}** Thereafter, on October 26, 2015, a bond forfeiture hearing was held in the trial court. (Doc. No. 90). The State, Guzman's attorney, and Hunter, on behalf of Erie Shore Bail Bonds, appeared for the hearing. (*Id*.). After considering the record, the trial court found that Guzman failed to appear in accordance with the terms of bail and ordered that the bail posted ($150,000) be forfeited. (*Id.*). The trial court further ordered:

> **As to recognizance given by any surety,** the Clerk of Courts shall notify accused [sic] and each surety by ordinary mail at the address shown by them in their affidavits of qualification or on the record of the case, of the default of the accused and the adjudication of forfeiture and require each of them to show cause on or before **MONDAY DECEMBER 21, 2015 @ 8:00 a.m.** [* * *], why judgment should not be entered against each of them for the penalty stated in the recognizance. If good cause by production of the body of the accused or otherwise is not shown, the Court shall thereupon enter judgment against the sureties or either of them, so notified, in such amount, not exceeding the penalty of the bond, as has been set in the adjudication of forfeiture, and shall award execution therefor as in civil cases. The proceeds of sale shall be received by the clerk or magistrate and distributed as on forfeiture of cash bail.

(Emphasis sic). (*Id.*).

**{¶9}** On December 21, 2015, the show cause hearing was held in the trial court on the bond forfeiture. (Doc. No. 97). Finding that good cause was not shown,

-4-

the trial court ordered judgment in the amount of $150,000 against Guzman's "surety, Erie Shore Bail Bonds." (*Id.*).

**{¶10}** Guzman was apprehended on January 1, 2015. (Doc. No. 99).

**{¶11}** On February 1, 2016, attorney Eric LaFayette ("LaFayette") filed a motion in the trial court styled: "Surety, Scott Allen Hunter, Erie Shore Bail Bonds and American Surety Company [Appellant], motion for relief from bond forfeiture due to the surety apprehending the defendant and returning the defendant to the jurisdiction of this honorable court pursuant to R.C.§2937.39." (Doc. No. 102). The motion averred that Hunter was the "surety agent for Erie Shore Surety [sic] *and* American Surety Company" (Appellant). (Emphasis added). (*Id.*).

**{¶12}** On April 18, 2016, a remittance hearing was held in the trial court. (Doc. No. 120). On May 12, 2016, the trial court issued its judgment entry of remittance ordering that $5,000 of the $150,000 bond should be remitted to the surety due to their efforts in locating and apprehending Guzman. (*Id.*). However, the trial court also ordered that the remaining $145,000 not be remitted to the surety, Erie Shore Bail Bonds. (*Id.*). Appellant was not named as a surety in this trial court entry. (*Id.*).

**{¶13}** Hunter and Erie Shore Bail Bonds appealed the trial court's remittance order to this Court on June 7, 2016 ("*Guzman I*"). (Doc. No. 122). The appeal

designated only Hunter and Erie Shore Bail Bonds as the "sureties" of Guzman's bonds. (*Id.*).

{¶14} On July 11, 2016, while the appeal was pending, LaFayette filed in the trial court a "notice to clarify representation of attorney Eric L. LaFyette [sic] as the representative of Scott Allen Hunter and Erie Shore Bail Bonds." (Doc. No. 130). In his notice LaFayette represented that he did *not* represent the Appellant. (*Id.*).

{¶15} On February 27, 2017, this Court filed its judgment on *Guzman I*, affirming the trial court's remittance order. (Doc. No. 135).

{¶16} Nearly a year later, on February 26, 2018, the State filed a motion requesting that the trial court issue a "*nunc pro tunc*" order, correcting its original remittance order.[1] (Doc. No. 137). The State asserted that the May 12, 2016 judgment entry was supposed to include Appellant. In support of its motion, the State attached the trial court's bond entry and copies of the bonds that Hunter signed (one for $100,000 and another for $50,000) on behalf of Erie Shore Bail Bonds. (*Id.*). Each bond bore identical language that authorized Hunter as Appellant's "power of attorney." (*Id.*).

{¶17} Appellant, appearing for the first time in the trial court on March 12, 2018, filed a memorandum in opposition to the State's motion for a *nunc pro tunc*

---

[1] Notably, the entry that the State requested the trial court to correct through the use of a *nunc pro tunc* entry was not the judgment entry that the trial court ultimately corrected. (*See,* Doc. No. 137, wherein the State requested a *nunc pro tunc* of the May 12, 2016 judgment entry on remittance of bond).

order. (Doc. No. 138). Appellant argued that the State was seeking to substantively change a prior order through the use of a *nunc pro tunc* entry, which was impermissible. (*Id.*). Appellant further argued that the underlying $145,000 judgment was void, because the trial court had revoked the initial $100,000 bond posted by Guzman. (*Id.*). Appellant attached to its motion the trial court's judgment entry of sentencing; the appeal bond order; a copy of Appellant's OR bond paperwork; the judgment entry forfeiture of bond; and the judgment entry remittance of bond. (*Id.*).

{¶18} On March 28, 2018, the trial court issued its judgment entry granting a *nunc pro tunc* entry of judgment on the bond forfeiture. (Doc. No. 139). The trial court found that Appellant, along with Hunter and Erie Shore Bail Bonds, had consistently been identified as the "surety" throughout the pendency of the case. (*Id.*). And, because the Appellant had always been listed as a surety of Guzman's bonds, the trial court corrected its judgment, *nunc pro tunc*, to reflect such in its December 21, 2015 judgment entry on bond forfeiture. (*Id.*). Further, the trial court's *nunc pro tunc* entry ordered judgment in the amount of $150,000 (as opposed to $145,000) against the Appellant.

{¶19} From this judgment Appellant appeals, and presents the following assignments of error for our review:

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED IN ADDING AMERICAN SURETY COMPANY TO A DECEMBER 21, 2015 JUDGMENT THROUGH THE ISSUANCE OF A *NUNC PRO TUNC* ENTRY.**

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED IN ENTERING JUDGMENT ON MARCH 28, 2018 IN THE AMOUNT OF $150,000 AGAINST AMERICAN SURETY COMPANY.**

*Appellant's First Assignment of Error*

**{¶20}** Appellant argues that the trial court erred by issuing a *nunc pro tunc* judgment entry adding it as a party to a prior judgment. We agree.

*Standard of Review*

**{¶21}** We review a trial court's Civ.R. 60 ruling under an abuse of discretion standard. *Business Data Systems, Inc. v. Gourmet Café Corp.,* 9th Dist. Summit No. 22096, 2005-Ohio-4, ¶ 23 citing *Hall v. Paragon Steakhouse,* 9th Dist. Lorain No. 99CA007443, 2000 WL 1026695, *1. "Under an abuse of discretion standard, a lower court's decision will [* * *] be reversed [* * *] only when the court's decision is unreasonable, arbitrary, or unconscionable." *Morrow v. Becker,* 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 9.

*Analysis*

**{¶22}** Under Civ.R. 60(A), a trial court may correct clerical mistakes in judgments, orders, or other parts of the record. *See generally, Business Data*

Case No. 1-18-21

*Systems, Inc.,* 9th Dist. Summit No. 22096, 2005-Ohio-4, ¶ 24. Specifically, Civ.R. 60(A) states, in relevant part:

> (A) Clerical Mistakes. Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its on initiative or on the motion of any party and after such notice, if any, as the court orders.

Civ.R. 60(A). Furthermore, "[i]t is within the trial court's discretion *to correct clerical mistakes that are apparent on the record*, but not those mistakes that require the court to make substantive changes in judgments." (Emphasis added). *Allied Erecting & Dismantling Co. v. Uneco Realty Co.,* 146 Ohio App.3d 136, 146, 2001-Ohio-3387, 765 N.E.2d 420

**{¶23}** In distinguishing a clerical error from a substantive error, a "clerical error," has been defined as "a mistake that is mechanical in nature and apparent on the record, which does not involve a legal decision or judgment." *Id. See also, Londrico v. Delores C. Knowlton, Inc.,* 88 Ohio App.3d 282, 285, 623 N.E.2d 723 (9th Dist.1993) (Civ.R. 60(A) allows the court, in its discretion, to correct clerical mistakes which are apparent on the record, but does not permit a court to make substantive changes in judgments); *Dentsply Intern., Inc. v. Kostas,* 26 Ohio App.3d 116, 118, 498 N.E.2d 1079 (8th Dist.1985) (clerical mistake is the type of mistake or omission mechanical in nature which is apparent on the record and which does not involve a legal decision or judgment by an attorney).

-9-

{¶24} In its *nunc pro tunc* judgment entry, the trial court found that the "surety" had been consistently identified as Hunter, Erie Shore Bail Bonds, *and* American Surety Company throughout the pendency of the case. (03/28/2018 J. Entry at 4). In support of its findings, the trial court referred to the bail bonds guaranteed by Appellant that appointed Hunter/Erie Shore Bail Bonds as its power of attorney to execute such bonds. (*Id.*; *see also* Doc. Nos. 63; 77). The trial court's analysis also referred to the show cause hearing held on October 26, 2015, which provided that the "defendant and/or surety" (i.e. Appellant) had an opportunity to show cause why the bail bond should not be adjudged forfeited, for which Appellant received notice but failed to appear. (*Id.* at 3; Doc. Nos. 87; 88; 92).

{¶25} The trial court then went on to find that the docket activity occurring after the December 21, 2015 hearing was determinative that Appellant was a "surety" of Guzman's bond. Specifically, the trial court found that the motion filed by LaFayette on behalf of Hunter, Erie Shore Bail Bonds, *and* Appellant requesting relief from the bond forfeiture was proof of Appellant's consistent involvement in the case at each stage of the forfeiture proceedings. (*Id.* at 4; Doc. No. 102). And lastly, the trial court determined that in the first appeal of this case, *Guzman I,* the "surety" never raised the issue of the validity December 21, 2015 judgment on appeal. (*Id.*). *See*, *State v. Guzman,* 3rd Dist. Allen No. 1-16-27, 2017-Ohio-682.

{¶26} In our review of the record to determine whether the omission of Appellant from the December 21, 2015 judgment entry was a clerical error or a substantive error, we find the record to be ambiguous as to whether Appellant was a "surety," throughout the course of the proceedings. Specifically, on December 21, 2015, at the bond forfeiture hearing, the trial court introduced the case as follows:

> **Trial Court: The matter is before the Court pursuant to the Judgment Entry on the Forfeiture of Bond that was filed on the 26th of October of this year. At that time the Court ordered that the bond posted, a total of a hundred and fifty thousand dollars, was forfeited because the defendant failed to appear and fled the jurisdiction of the Court.** *The Court gave notice to the surety of record, which is the Erie Shores (sic) Bail Bonds***, to determine this morning at the hearing whether there's reason why judgment should not be entered against the surety on the amount of the recognizance, or the hundred and fifty thousand.**

(Emphasis added). (Bond Forfeiture Hrg., 12/21/2015 Tr. at 1). The trial court went on to reaffirm that Erie Shore Bail Bonds was the surety, discussing the purpose of the hearing as:

> **Trial Court: Again, the purpose of the hearing this morning is for Erie Shore Bail Bonds to show cause why judgment should not be entered against them.**

(*Id.* at 2). Finally, the trial court, after hearing the testimony, found the following:

> **Trial Court: Upon consideration of all the facts in this case the Court's going to find that good cause has not been shown by the production of the body of the accused, or otherwise, and so I'm going to order** *that judgment be entered against Erie Shore Bail Bonds* **in the amount of a hundred and fifty thousand dollars and**

> **execution of that shall be awarded as in a civil case and was represented here, Mr. Guzman (sic), Ohio Revised Code 2937.37, I believe, would allow for if you produce Mr. Guzman's body to the Court after the judgment, which I'm entering today, you can apply for remitter. Okay?**

(Emphasis added). (*Id.* at 5). At no point during the hearing did the trial court, the State, or Hunter mention Appellant as a surety of Guzman's bonds.

**{¶27}** After the hearing, the trial court journalized its ruling with the following language:

> Therefore, it is **ORDERED, ADJUDGED** and **DECREED** that Judgment shall be and hereby is entered, pursuant to R.C. 2937.36, *against the surety,* **Erie Shore Bail Bonds** in the amount of **$150,000.00**, which amount does not exceed the penalty of the bonds as were posted on May 4, 2015 and July 29, 2015, as had been set in the adjudication of forfeiture filed on October 26, 2015.

(Emphasis added). (Emphasis sic). (*Id.*).

**{¶28}** Furthermore, we do not find that LaFayette's (one time) filing on behalf of Appellant to be conclusive of Appellant's "consistent" involvement as a surety in this matter. Even though LaFayette filed a motion on behalf of Hunter, Erie Shore Bail Bonds, *and* Appellant, he subsequently filed a motion to "clarify representation," wherein he represented (to the trial court) that he was not retained by and did not represent Appellant.[2] (*See,* Doc. No. 130). Lastly, with regards to the first appeal to this Court, we note that the identified parties were: "Appellant,

---

[2] The trial court also acknowledged this filing in its judgment entry granting the *nunc pro tunc* order. (*See* Doc. No. 139).

Scott Allen Hunter ("Hunter"), d.b.a. Erie Shore Bail Bonds ("Erie Shore") (as, "Surety") ***. *Guzman,* 3rd Dist. Allen No. 1-16-27, 2017-Ohio-682, at ¶ 1. As a matter of fact, the Appellant herein, (American Surety Company) was never referred to as an interested party by anyone in our first decision. *Id.*

**{¶29}** Accordingly, since the "surety" was "inconsistently" identified throughout the course of the proceedings hereunder, we cannot say that it is "clear from the record" that Appellant's omission from the judgment entry was just a "clerical error."

**{¶30}** In *State v. Senz,* a case factually similar to the case at hand, the trial court ordered forfeiture of bond and entered judgment against the corporate entity that posted the defendant's bond. *State v. Senz,* 9th Dist. Wayne No. 02CA0016, 2002-Ohio-6464, ¶ 3. In *Senz,* the bondsman and the corporate entity filed a motion to vacate and set aside a judgment against the corporate entity. *Id.* Thereafter, the trial court entered a judgment entry *nunc pro tunc*, stating that the earlier judgment against the corporate entity would include the issuer of the bond as part of the surety. *Id.* at ¶ 4. The appellate court reversed, holding that:

> [T]he trial court's nunc pro tunc (sic) entry entered judgment against another party. This is a substantive change and not an entry that merely reflects what had previously occurred in the court. Accordingly, it was error for the trial court to enter judgment against Bankers Insurance Co. (the issuer of the bond) through a nunc pro tunc (sic) entry.

*Id.* at ¶ 13.

{¶31} Here, even though the trial court cited numerous cases to support its conclusion that the Appellant was bound by its December 21, 2015 judgment entry, none of the cases cited by the trial court utilized a *nunc pro tunc* to do so. *See, State v. Slider, et al.,* 184 Ohio App.3d 68, 2009-Ohio-4179, 919 N.E.2d 775. ¶ 14 (decision of the trial court was reversed and remanded *for additional findings of fact* as to the intent of the parties); *State v. Slider,* 9th Dist. Washington No. 09CA41, 2010-Ohio-5952, ¶ 7 (*remand hearing was held* for the limited purpose of resolving the ambiguity that existed with respect to the capacity in which the Appellant signed the recognizance bond); *State v. Sexton,* 132 Ohio App.3d 791, 792, 726 N.E.2d 554 (4th Dist.1999) (bonding company appealed *the judgment entry arising from the bond forfeiture hearing*); and *State v. Scherer,* 108 Ohio App.3d 586, 589-90, 671 N.E.2d 545 (2nd Dist.1995) (trial court ordered bond forfeited after *a bond forfeiture hearing* because defendant failed to appear).

{¶32} Moreover, none of the cited cases stand for the proposition of law that a trial court may add a party to a prior judgment through the use of a *nunc pro tunc*. To the contrary, Ohio case law has consistently held that a *nunc pro tunc* may not be used to add a party to a judgment. As we have previously held, "[a] *nunc pro tunc* order may not render a judgment or modify a judgment never made in the first instance." *Lowery v. Estate of White,* 3rd Dist. Allen No. 1-200-15, 2000-Ohio-1906, *1, citing *McKay v. McKay,* 24 Ohio App.3d 74, 75, 493 N.E.2d 317 (11th

Dist.1985). The Ninth District Court of Appeals, in *Business Data Systems, Inc.,* expounded upon this principle and held that "[c]hanging a party's liability on a judgment is clearly a substantive change in the parties' rights and not merely a correction of a clerical error." *Business Data Systems, Inc.,* 9th Dist. Summit No. 22096, 2005-Ohio-4, ¶ 37. The Second District Court of Appeals, in *Nemcic v. Phelps,* followed *Business Data Systems, Inc.'s* holding that changing a party's liability on a judgment is clearly a substantive change and the trial court could not have modified its prior order under Civ.R. 60(A). *Nemcic v. Phelps*, 2nd Dist. Montgomery No. 26066, 2014-Ohio-3952, 19 N.E.3d 554, ¶ 21.

**{¶33}** Lastly, even if this was a proper *nunc pro tunc* order, we would not have jurisdiction to hear this appeal, "[b]ecause * * * a proper *nunc pro tunc* entry does not give rise to a new final order for purposes of appeal." *Matter of H.S.,* 9th Dist. Ross No. 16CA3569, 2017-Ohio-457, 84 N.E.3d 127, ¶ 49 citing *State v. Lester,* 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph two of the syllabus ("a *nunc pro tunc* judgment entry issued for the sole purpose of * * * correct[ing] a clerical omission in a final judgment entry is not a new final order from which a new appeal may be taken.")

**{¶34}** For the foregoing reasons, we find that the trial court abused its discretion in amending a final judgment to include a new party *nunc pro tunc.* Thus,

we sustain Appellant's first assignment of error and reverse the *nunc pro tunc* order of the trial court.

### *Appellant's Second Assignment of Error*

**{¶35}** Having found the underlying *nunc pro tunc* invalid in Appellant's first assignment of error, Appellant's second assignment of error is rendered moot.

### *Conclusion*

**{¶36}** Having found error prejudicial to Appellant herein in the particulars assigned and argued, we sustain Appellant's first assignment of error, which renders the second assignment of error moot. This matter is remanded back to the Allen County Common Pleas Court for proceedings consistent with this opinion.

**Judgment Reversed and
Cause Remanded**

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**